# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | NO. 2:09 CR 226 PS |
| | ) | |
| TY BROCK | ) | |

## OPINION AND ORDER

Defendant Ty Brock drove into a checkpoint set up by the Lake County Drunk Driving Task Force in the early hours of November 8, 2009. When two police officers approached his car to make an initial contact with Brock, one officer smelled burnt marijuana and the other saw Brock attempt to hide what appeared to be controlled substances. They arrested Brock, found a gun on him, and then searched his car and found controlled substances and another gun. Brock was subsequently charged with possession of heroin with the intent to distribute, the possession of marijuana with the intent to distribute, and the possession of a weapon in relation to the drug trafficking offenses.

Brock filed a motion to suppress, challenging the validity of the checkpoint under the Fourth Amendment. On January 12, 2010, I held a hearing on Defendant Ty Brock's Motion to Suppress. The Government brought in two witnesses, Officers Lewis and Oszust, to testify on the suppression issue. The Defendant did not have any witnesses testify. This order reduces to writing the Court's findings of fact and ruling denying the motion previously made on the record.

**Background**

On November 7, 2009, the Lake County Drunk Driving Task Force worked a sobriety

checkpoint from approximately 11:00 p.m. to 4:00 a.m. [DE 19, at 1.] The checkpoint was located at 2701 Ripley Street, in Lake Station, Indiana. Approaching motorists were warned about the checkpoint and given the opportunity to turn left or right before the checkpoint, thus permitting them to avoid the checkpoint altogether. [DE 19, at 1.] This seems a bit odd – What's the point of a roadblock if drunk drivers can readily avoid it? – but according to the evidence at the hearing this is a requirement of Indiana state law.

Officer's Lewis and Oszust testified for the Government about the logistics of this checkpoint. They both testified that they received special training to work at sobriety checkpoints. Officer Lewis has worked between twenty and thirty checkpoints, and Officer Oszust has worked at least twenty checkpoints. They testified that before this checkpoint began, all of the officers received specific instructions on how to handle the checkpoint from Officer Rudzinski, who has provided the directives for every checkpoint they have participated in with the task force. For this particular checkpoint, Officer Rudzinski instructed the officers to stop cars in a pattern whereby they stopped eight cars and then let the next eight cars pass unchecked.

Officer Lewis testified that he was assigned to make initial contact with the cars directed into the checkpoint. He stated that he asked every driver for a driver's license, registration, and proof of insurance. He said that this process would take between one and five minutes, depending on how long it took the driver to find this information. If the driver was unable to produce this information, Officer Lewis stated that he directed the cars to another area where officers investigated the driver further.

Defendant Ty Brock drove a blue 1994 Mercury down Ripley into the checkpoint and was flagged into the initial contact area according to Officer Rudzinski's directive. Officers

Lewis and Oszust approached the car. Officer Lewis testified that when he approached the driver's side and Brock opened his window, he immediately smelled what he recognized as burnt marijuana. Officer Lewis testified that he also noticed that Brock was trembling and appeared nervous. Officer Oszust, who was on the passenger's side, testified that while Brock reached for the glove compartment in response to Officer Lewis's request for information, he noticed that Brock was pushing a ceramic plate under the driver's seat with his foot. Officer Oszust saw two piles of powder on the plate – one white and one off-white – along with a razor and straw. He informed Officer Lewis that Brock was pushing what he believed to be controlled substances under the seat.

At that point, Officer Lewis directed Brock to put his hands on his head, and Brock followed the order. Officer Lewis testified that as Brock exited the vehicle, a ring dropped from his finger and rolled out in front of him. Brock bent down and reached toward one of his ankles. Responding to what he thought was resistance, Officer Lewis, with the help of another officer, put Brock in a hold, pushed him to the ground, cuffed him, and arrested him. After he was cuffed, the officers patted him down and found a loaded Beretta .32 caliber semi-automatic pistol in an ankle holster near where Brock had been reaching. [DE 19, at 3.] His car was also searched after his arrest. The off-white powdery substance field-tested positive for heroin, and the vehicle also contained over 100 grams of marijuana, a loaded Heckler & Koch .9mm pistol, a glass smoking pipe, numerous pills, 9 grams of heroin, a syringe, a scale, latex gloves, and a pill crusher. [DE 19, at 3.]

## Discussion

Brock does not challenge the search of his car or his arrest. Rather he challenges the

3

validity of the checkpoint. Stopping a vehicle at a checkpoint is a seizure under the Fourth Amendment. *Michigan Dep't of State Policy v. Sitz*, 496 U.S. 444 (1990). Constitutional challenges to this type of seizure turn on whether the initial stop was reasonable. *United States v. Trevino*, 60 F.3d 333, 336 (7th Cir. 1995). Analysis of the initial stop requires a balance of the "objective intrusion" and the "subjective intrusion" of the seizure. The objective intrusion is the "duration of the stop itself and the intensity of any brief questioning and visual inspection that might attend it." *Id.* The subjective intrusion is the "potential for generating fear and surprise to law-abiding motorists." *Id.* The Government has the burden to show to a preponderance of the evidence that the checkpoint was valid under this standard. *See Colorado v. Connelly*, 479 U.S. 157, 168 (1986); *United States v. Stewart*, 526 F.3d 714, 719 (7th Cir. 2008).

The only argument presented in Brock's motion is that the Government has the burden to show that the checkpoint was valid. [DE 15, at 3.] The Government has met its burden. At the hearing, Brock's counsel argued that the checkpoint was improperly intrusive because the stop was longer than the stops discussed in *Sitz*, which were approximately twenty-five seconds long; because two officers approached Brock's vehicle for the initial contact; and because the directives were not formally written out for the officers for the checkpoint.

But as noted in *Trevino*, *Sitz* does not require such high standards for checkpoints. In *Trevino*, the Seventh Circuit rejected a challenge to a checkpoint where the officers were checking for automobile equipment violations. 60 F.3d at 336. The defendant argued that he was taken by surprise by the checkpoint because there was no warning prior to the officers flagging him down. *Id.* In evaluating objective intrusion of the checkpoint, the court recognized that in *Sitz* there were warning signs prior to the checkpoint, but held that *Sitz* did not require all

4

checkpoints to include clear warnings to pass constitutional muster. *Id.* at 337. The court also held that the stop was not intrusive because the officers were in uniform, their vehicles were visible, and the officers followed set guidelines that the police department created for the checkpoint. *Id.* at 338.

Following the line of reasoning in *Trevino*, this stop was neither objectively nor subjectively intrusive. First, this checkpoint was not objectively intrusive. The checkpoint here is less intrusive than the checkpoint in *Trevino*. Drivers had the opportunity to turn left or right once they saw the checkpoint, permitting them to avoid the stop altogether. And for cars that were stopped, the length of the stops at this checkpoint was not intrusive. In the checkpoint discussed in *Trevino*, 60 F.3d at 335, the drivers were stopped for three to five minutes, which is longer than the checkpoint here, where the initial stop took between one and five minutes. And the questioning here was not intrusive; Officer Lewis simply asked Brock for the same information that he asked from every other driver. The stop was only lengthened after Officers Lewis and Oszust had probable cause to believe Brock was in possession of controlled substances. Officer Lewis testified that he smelled burnt marijuana very shortly after Brock opened his window, and noticed his trembling while Brock was reaching for the glove compartment. At the same time, Officer Oszust saw Brock kicking the plate containing what appeared to be illegal drugs under his seat while Brock was reaching for the glove compartment. Because the officers' questioning was very brief and requested basic information, the stop was not objectively intrusive.

Turning to the subjective intrusion of Brock's stop, the Government has also met its burden to show that the stop did not have the potential to generate fear or surprise. Officer

5

Rudzinski gave the officers specific and neutral instructions on how many cars to permit to pass, and how many to stop for the inspection. The officers testified that the task force set up the checkpoint so that cars had the opportunity to turn before entering the checkpoint. The fact that drivers could avoid the checkpoint completely lessens the possibility for surprise or fear substantially.

Although Brock's counsel argued that the fact that two officers approached his car makes this stop intrusive, Brock provides no authority for this argument. Brock does not argue that he was surprised or frightened by the officers' approach, and the officers testified that stopping Brock's car was not a result of profiling by the appearance of the driver or car; rather, Brock's car was stopped because of Officer Rudzinski's objective pattern. Given that the stop was not lengthened until the officers had probable cause to investigate Brock further, there was no subjective intrusion here.

For the foregoing reasons, Defendant's Motion to Suppress [DE 13] is **DENIED**.

**SO ORDERED**.

ENTERED: January 22, 2010

s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT